UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL D. TAYLOR,

             **Plaintiff,**            **CIVIL ACTION NO. 13-cv-12926**

             **v.**            **DISTRICT JUDGE LAURIE J. MICHELSON**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

             **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael D. Taylor seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 16). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 2.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.   RECOMMENDATION

The undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 14) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 16) be GRANTED.

## II.     PROCEDURAL HISTORY[1]

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with a protective filing date of September 16, 2010, alleging disability beginning November 4, 2008, due to a gunshot wound to the right knee and thigh, memory loss, and brain injury. (*See* TR 14, 245.) The Social Security Administration denied Plaintiff's claim on April 6, 2011, and Plaintiff requested a *de novo* hearing, which was held on September 19, 2011, before Administrative Law Judge (ALJ) Patricia S. McKay, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 14, 24-26.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

### A.     Plaintiff's Testimony

Plaintiff was 51 years old at the time of the administrative hearing and 48 years old at the time of alleged onset. (TR 24, 78.) After a lengthy discussion regarding Plaintiff's right to representation at the hearing (TR 34-52), whether Plaintiff's medical record was complete (TR 53-71), the hearing issues (TR 71-74), and the hearing process (TR 74-76), the ALJ proceeded with her examination of Plaintiff (TR 76). Plaintiff testified that he was not married, had no children, and lived with his mother and father, primarily in the basement. (TR 76-77, 79.) Plaintiff testified that

---

[1]Plaintiff filed applications for disability benefits in 2000, which were ultimately denied. (TR 14, 126-156.) Plaintiff filed a second set of applications, and benefits were awarded in 2002, but were terminated in 2005 for failure to participate in a Continuing Disability Review. (TR 14, 164.)

he completed high school, went to a welding training center, completed an iron worker apprenticeship, and eventually obtained journeyman status as an iron worker.  (TR 81, 82.)

Plaintiff testified that all of the jobs he had over the past 15 years was iron work for various contractors.  (TR 82-83, 86.)  He elaborated that his duties as an iron worker were welding, bolting, signaling cranes, and operating a forklift.  (TR 83-84.)  Plaintiff added that he had to carry a 40-pound iron worker belt around his waist daily but didn't know exactly how much weight he generally had to lift.  (TR 84-85.)  Plaintiff also testified that he worked at the Auto Show Convention for one weekend setting up the displays and moving items around. (TR 86-87.) Plaintiff confirmed that he last worked in 2007 for Metro Industrial Contracting at the "Ford Roush" on a furnace rebuild.  (TR 88-89.)  He then stated that he received unemployment benefits for the next few years but hadn't received any since June of 2010.  (TR 89-90.)  Plaintiff testified that to continue those unemployment benefits, he was looking for any kind of work and checking with the union hall for available iron work. (TR 90-91.) Plaintiff also testified that he sought state assistance in finding a job. (TR 92.) Plaintiff further testified that his only source of income as of the hearing date was food stamps.  (TR 93.)

Plaintiff testified that he had a driver's license and that he drove about five to seven times per week to his parent's store, or just to get around, but not far.  (TR 93-94.) Plaintiff admitted that he drove to the hearing.  (TR 94.)  Plaintiff said that on an average day, he would wake up, listen to the radio, have some cereal, and visit his parents at their clothing store, but not much more than that. (TR 95.)  He elaborated that he would go to his parents' store three to five days per week, and explained that he was only there to visit, not to help out. (TR 96.) Plaintiff also stated that he would

go to the laundromat once a month or once every two months to do his laundry but that his mother

did his laundry a lot of the time.  (TR 79-80.)

    With regard to his current ailments, Plaintiff testified that he suffers from right knee pain due to a gunshot wound from a fifty caliber slug.  (TR 97.)  He added that because of the gunshot wound, he no longer has cartilage in his right knee, a piece of his tibia bone is missing, and he has bone spurs.  (TR 97.)  Plaintiff also testified that he suffers from residual left leg pain from breaking his leg in a motorcycle accident in 1973.  (TR 97-98.)  He added that he has other residual problems with his left side from head to toe resulting from the motorcycle accident, which his doctor called "left-side weakness."  (TR 98.)  When asked by the ALJ what had happened since November of 2008 that prevented him from working as an iron worker, Plaintiff testified that he wasn't able to do his job even while he was working because he would fall on every job due to balance and limping issues.  (TR 99-101.)  Plaintiff also testified that he used a cane and a TENS machine as needed. (TR 102-103.)  Plaintiff further testified about the paralysis in his left hand.  (TR 104.)  He explained that he can move it and use it to some extent, but can't use it in the same ways that he uses his right hand and added that he can sometimes grasp things, but is unable to control it.  (TR 104-105.)  Plaintiff elaborated that he is right-handed and that he has learned to do things with his right hand, that he has to remember to use his left hand, and that his right hand has taken over for his left side. (TR 105-106.)

    **B.    Vocational Expert's Testimony**

    First the Vocational Expert (VE) confirmed that she had reviewed the evidence regarding Plaintiff and that she had been present for his hearing testimony.  (TR 107.)  Then, after some clarification from Plaintiff, the VE classified Plaintiff's past work as an iron worker as skilled and performed at the heavy exertional level.  (TR 108-109.)  Next, the ALJ asked the VE whether a hypothetical person of the same age, education, and work experience as Plaintiff could perform

4

Plaintiff's past relevant work where that person has "the residual functional capacity to perform the full range of light exertional work, lifting up to 10 pounds frequently and 20 pounds occasionally, but with the following additional limitations: He would be able to engage in postural activities, such as climbing stairs, crouching, crawling, kneeling, stooping, and bending on an occasional basis as opposed to more often such as frequently or constantly; he needs to avoid climbing ladders; he needs to avoid exposure to dangerous workplace hazards, such as moving machinery and unprotected heights, again, precludes climbing ladders; he can tolerate some exposure to code [sic] temperature extremes, but generally needs to work in an indoor environment; the work needs to be simple, routine, and repetitive to where he's able to control the pace of the work as opposed to like a production line work environment; and he can tolerate occasional contact with co-workers or the general public. (TR 109-110.) The VE testified that such an individual could not perform any of Plaintiff's past relevant work but could perform work in the light, unskilled category, for example, as an inspector for which there were 14,000 jobs in Southeast Michigan and double that in the entire State, or a small products assembler for which there were 7,000 jobs in Southeast Michigan, and double that in the State. (TR 110-111.)

The ALJ then asked the VE whether there would be any effect on the availability of those jobs if that person needed to use an assistive walking device. (TR 111.) The VE testified that the additional limitation would not affect the availability of those jobs. (TR 111.) The ALJ further asked if the availability of those jobs would be affected if the person were limited to jobs "where he's primarily in one place, avoiding jobs where he's required to walk around . . . [where] he could either be sitting or standing while he's doing the work, but he's limited to working at that station." (TR 111.) The VE responded that there would not be a significant reduction in the availability of those jobs. (TR 111.) The VE further testified that there could be an approximate fifteen percent

reduction in the availability of those jobs where that person would be limited to primarily using his right hand to manipulate objects and only using his left hand to assist.  (TR 112.)

Next, the ALJ asked the VE whether, considering all of the limitations presented except for the left hand assist, there would be any jobs available to the hypothetical person at the sedentary exertional level.  (TR 112-113.)  The VE responded that there would be jobs available such as a sorter for which there were 1,500 jobs in Southeast Michigan, a bench assembler with 3,000 jobs in Southeast Michigan and double that in the State, and a surveillance system monitor with 1,400 jobs in Southeast Michigan and double that number in the State.  (TR 113.)  The VE added that there would be a fifteen percent reduction in the number of available sorter and bench assembler jobs with the addition of the left hand assist limitation.  (TR 113.)

The ALJ also asked the VE to consider an individual's need to take frequent, unscheduled breaks, at least two in the morning and two in the afternoon, where he would need to be away from the work site for personal issues because he lacks the persistence or pace required for competitive employment, where he would need to retreat from the work site to compose himself before returning to work.  (TR 113.)  The ALJ then asked the VE how that would affect the availability of the jobs previously discussed, or any other jobs .  (TR 113-114.)  The VE responded that it would preclude competitive employment.  (TR 114.)

Lastly, the ALJ asked the VE whether the hypothetical claimant could perform Plaintiff's past work, or any other work, assuming that the hypothetical claimant had offered the same testimony as Plaintiff and that the ALJ found the hypothetical claimant to be fully credible.  (TR 114.)  The VE testified that there wasn't one specific thing that Plaintiff testified to that she found to be preclusive of employment but that if a combination of his symptoms took him off-task for more than twenty percent of the workday, competitive employment would be precluded.  (TR 114.)  The

6

VE then confirmed that her testimony was consisted with the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations defined in the revised DOT.  (TR 114.)

### C.    Medical Evidence

Plaintiff neither offers an account of his medical record as part of his Motion nor does he assert that the ALJ's interpretation of his medical record was error.  (*See* docket no. 14.)  Moreover, Plaintiff only attacks the ALJ's determination with regard to Plaintiff's credibility.  (*Id.*)  Thus, the full contents of Plaintiff's medical record are not required for the Court to reach a conclusion, and therefore, the undersigned will not include a recitation of Plaintiff's medical record in this Report and Recommendation but will, instead, adopt the ALJ's account of Plaintiff's medical record in her decision.  (TR 17-23.)

### IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010, and that he had not engaged in substantial gainful activity since the alleged onset date of November 4, 2008.  (TR 16-17.)  The ALJ then found that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the lumbar spine; degenerative joint disease of the right knee, status post gunshot wound to the right leg; a mood disorder and a cognitive disorder, status post closed head injury."  (TR 17.)  The ALJ also found, however, that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 17-19.)  The ALJ determined that she was not bound by the findings of previous ALJs in light of new and material evidence which justified a change in Plaintiff's residual functional capacity (RFC) assessment.  (TR 23-24.)  The ALJ then determined that Plaintiff had the following RFC:

7

> [C]laimant has the residual functional capacity to perform the full range of light work, as defined in 20 CFR 404.1567(b) and 416.967(b), provided it involves only occasional climbing of stairs, crouching , crawling, kneeling, stooping/bending; does not involve working near hazards such as moving machinery, unprotected heights, and climbing of ladders; is performed indoors so as to avoid exposure to cold temperature extremes; is simple, routine, and repetitive work over which the claimant is able to control the pace of the work (i.e., avoid a production line work environment); and it involves only occasional contact with co-workers and the general public.

(TR 19.)  Subsequently, in reliance on the VE's testimony, the ALJ found that Plaintiff could not perform any of his past relevant work but that he could perform a significant number of jobs in the national economy.  (TR 24-25.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from November 4, 2008, through the date of the ALJ's decision. (TR 26.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the

8

administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v.*

9

*Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff argues that this matter should be reversed or remanded under sentence four because "[t]he Administrative Law Judge failed to follow Social Security Ruling 96-7p regarding the evaluation of symptoms and assessing the credibility of [] Plaintiff's [] statements after factoring in his diminished capacity."  (Docket no. 14 at 10.)

### 1.    Waiver

Defendant asserts that Plaintiff has failed to brief any claim with sufficient specificity to avoid waiver.  (Docket no. 16 at 11-14.)  Plaintiff has not responded, and the undersigned agrees

10

with Defendant.  As Defendant argues, "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"  *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed.Appx. 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996)).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).  The "'court is under no obligation to scour the record for errors not identified by [the] claimant.'"  *Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan 25, 2013) (Grand, M.J.) (quoting *Martinez v. Comm'r of Soc. Sec.*, No. 09-13700 (E.D. Mich. Mar. 2, 2011)).

Here, Plaintiff's six-page brief consists of one page of procedural history; one and a quarter pages setting forth the standard of review; one and a quarter pages copied and pasted from the Western District of Washington's unpublished opinion in *Emmons v. Astrue*, No. 11-cv-5108-RBL-JRC, 2012 WL 200507035 (W.D. Wash. Apr. 19, 2012), which discusses the standard for credibility determinations in the Ninth Circuit; and the following argument (set forth in full):

> Despite the overwhelming evidence in the record the Plaintiff has good reason to complain of pain and inability to comprehend which results in the inability to perform gainful activity, the Administrative Law Judge found to the contrary.  The Administrative Law Judge's determination was construed in *Emmons v Astrue*, 2012 WL 2005070 (WD Wash 2012). There the court in discussing this language was highly critical and said:

> .   .   .

> The ALJ is supposed to review the record as a whole. The ALJ here concentrated on the parts of the record where Plaintiff was found to have made improvement. Improvement compared to what?

> In Social Security Disability cases, when the medical signs or laboratory findings show the claimant has one or more medically determinable impairments which could reasonable [sic] be expected to produce the claimant's symptoms such as pain, lack of mental capacity, the SSA must then evaluate, persistence and lack of mental capacity of the claimant so it can determine how the claimant's symptoms

limit the claimant's capacity to work.

In evaluating the intensity and persistence of the claimant's symptoms, the SSA considers all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, and statements from the claimant, the claimant's treating or examining physician or psychologist, or other persons about how the claimant's symptoms affect the claimant. *Id.* The SSA also considers the medical opinions of the claimant's treating source and other medical opinions. *Id.*

(Docket no. 14 at 10-12 (omitted section consists of the *Emmons* opinion).)  Plaintiff's brief is thoroughly deficient and devoid of proper factual substance and discernable legal analysis.  The undersigned is only aware that Plaintiff's argument relates to the ALJ's credibility determination because Plaintiff indicated as much in a heading of his "Legal Argument" section.  (*See id.* at 10.) Therefore, the undersigned recommends that Plaintiff's Motion be denied, as he has waived his only argument therein.

### 2. *Plaintiff's Credibility Argument*

Even if Plaintiff has not waived his argument, the undersigned recommends that his Motion be denied.  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997).  But credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.  "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  *Id.*  "[T]he adjudicator may find

12

all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2).  The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

After stating that she found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not credible, the ALJ discussed her reasoning for such a finding. (TR 21-24.)  Specifically, the ALJ considered the following:

- Plaintiff's ability to perform substantial gainful activity as an iron worker prior to the alleged onset date in spite of his prior injuries and the fact that Plaintiff's injuries had not worsened or changed since the alleged onset date (TR 21);

- Plaintiff's failure to seek treatment for his right knee, lower back, or emotional/mental issues since the alleged onset date although he had sought treatment for conditions other than his severe impairments (TR 21);

- Plaintiff's demeanor and ability to answer questions at the hearing (TR 21);

- Plaintiff's lack of apparent difficulty understanding, concentrating, talking, answering, sitting, standing, walking, seeing, or using his hands in an

13

interview with a state agency employee (TR 21);

• Plaintiff's receipt of unemployment benefits after the alleged onset date, which required him to represent himself to the state as able to work, while presenting himself as totally disabled to the Social Security Administration (TR 21-22);

• opinion evidence that Plaintiff was physically capable of performing a range of light exertional work (TR 22);

• opinion evidence that Plaintiff retained the mental ability to perform simple, repetitive, and routine tasks (TR 23); and

• Plaintiff's "admitted abilities to drive a car, care for himself, work when work is available to him and look for work when it is not" (TR 24).

As noted herein, Plaintiff has not even attempted to explain how the ALJ's decision was deficient or how her characterization of Plaintiff's credibility is inappropriate. But even if Plaintiff had set forth an argument in that regard, the Court would be remiss if it did not afford appropriate deference to the ALJ's decision in this matter. The ALJ appears to have carefully considered the factors set forth in 20 C.F.R. § 416.929(c)(3) and has sufficiently articulated the weight that she gave Plaintiff's statements and the reasons for that weight. Thus, the ALJ's decision is supported by substantial evidence, and Plaintiff's credibility "argument" fails.

## VI.    CONCLUSION

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 14) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 16) be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for

14

in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 8, 2014          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 8, 2014          s/ Lisa C. Bartlett
                               Case Manager

15